CLINTON (GROVER & BAKER SEWING
MACH. CO v.).   See Case No. 5,845.

## Case No. 2,898.

### CLINTON v. The HANNAH, ETC.

[Bee, 419.][1]

Admiralty Court of Pennsylvania.  1781.

ADMIRALTY JURISDICTION—SHIPWRIGHT'S WAGES.

A shipwright cannot sue in the admiralty for his contract wages for building a ship or vessel designed for navigation on the high seas.

[Cited in Shrewsbury v. The Two Friends, Case No. 12,819; Pritchard v. The Lady Horatia, Id. 11,438; Levering v. Bank of Columbia, Id. 8,287; Ramsay v. Allegre, 12 Wheat. (25 U. S.) 618, 619; The Stephen Allen, Case No. 13,361; Bains v. The James and Catherine, 1d. 756; The Draco, Id. 4,-057; U. S. v. New Bedford Bridge, Id. 15,-867; Waring v. Clarke, 5 How. (46 U. S.) 480; Jackson v. The Magnolia, 20 How. (61 U. S.) 331; People's Ferry Co. v. Beers, Id. 402; Cunningham v. Hall, Case No. 3,481. Distinguished in Zane v. The President, Id. 18.201. Disapproved in The Richard Busteed, Id. 11,764.]

[This was a suit by Clinton against the brig Hannah, and the ship General Knox.]

A plea to the jurisdiction of the court was filed in this cause: and the question was, whether a shipwright might sue in the admiralty for his contract wages for building a ship or vessel designed for navigation on the high seas? After long argument, the judge gave his opinion as follows. The authorities which the libellants have urged in favour of the jurisdiction of this court, in the present case, are Croke, 296, and 1 Rolle, 533. All the other authorities adduced having reference to those, except one in 1 Strange, 707. In the first edition of Croke, 296, we find resolutions upon cases of admiralty jurisdiction subscribed by all the judges of both benches, in April, 1632; wherein, amongst other things, it is resolved that a shipwright may sue in the admiralty, provided his suit be against the ship. Rolle, as a faithful abridger, gives the law as it then stood under the·authority of these resolutions. In article 19, he mentions the doctrine respecting shipwrights, and cites the case of Tasker v. Gale. And in article 21, he gives the law respecting charter-parties, adding these remarkable words: "As it was declared by the court to have been lately resolved by all the judges of England." So that those resolutions seem to be the only foundation upon which these doctrines rest. And it is very observable, that although Croke records the resolutions as they were subscribed in Hilary term, the eighth of Charles, yet he does not report the case·of Tasker v. Gale, although adjudged (according to Rolle) in the ninth of Charles, which must have been but a few months after. Neither hath any other reporter of that period noticed this case. From which it seems probable, that those resolutions, and the judgment in the case of Tasker v. Gale, were not admitted as good law even in that day.

But it is further observable, that when Sir Harbottle Grimestone published Croke's Reports in the year 1657, he prefixed, even to this first edition, a declaration under the title Mantissa, that the resolutions of the judges in February, 1632, were not of authority: and for this reason (according to Comyns) those resolutions were totally omitted in the subsequent editions of that work. Since that time no instance can be found in the books, where either these resolutions, or the case of Tasker v. Gale adjudged thereupon, have been referred to either by the court, or in the pleadings in any adjudged case, except in the case of Wooward v. Bonithan, Sir T. Raymond, p. 3: and there the court declared, that those resolutions had been denied by several judges, and renounced by even some of those who had subscribed them. And of this, Danvers also takes particular notice. Page 271. Therefore the authority of these resolutions seems to have been abolished by general consent. But another case has been referred to as authority in point, viz. 1 Strange, 707. The report is very short, and in these words: "On a motion for a prohibition, it was held, that a carpenter may sue for wages in the admiralty." This report, however, is too slight and solitary to authorize a decision contrary to general established rules. The word "carpenter" doth not precisely indicate a shipwright, but may be applicable to a mariner on board a vessel; and as the cases referred to in the margin of this report, respecting the officers of a ship who sued in the admiralty as mariners, the probability is, that this also was an officer called the "ship's carpenter:" a doubt having arisen whether the subordinate officers of a ship, as well as the master, were not prohibited from suing in the admiralty for wages. If the resolutions of the judges in 1632, and the decision in the case of Tasker v. Gale, were admitted as law, and if the carpenter mentioned in 1 Strange, 707, was the shipwright or builder, how is it possible that the judges so lately as the year 1765, should declare in court, that no instance could be found where both the contract and service were to be done on land, within the body of a county, that the common law courts ever permitted the admiralty to have jurisdiction? I refer to 2 Wils. 265: and this opinion was given in the case of a pilot suing for services done, indeed within the body of a county, but in a case of a much stronger maritime complexion than the present.

There are several exceptions to the general rules of law respecting admiralty jurisdiction, as ascertained by the statutes: such as suits for mariners' wages, and on hypothecations made by the master in foreign parts, &c. &c. which have been so often contested,

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

and so often allowed, for good and weighty reasons, that they have become confirmed law, and it would be in vain now to oppose the general rule to the general practice. But this does not appear to be the case with respect to shipwrights; neither are the same reasons applicable to them. Their contract is made with persons whom they know, or ought to know; their services are all executed within the body of the county, and mostly on dry land above high water mark; their wages have no reference to a voyage performed, or to be performed; the shipwrights have no interest or concern whatever in the vessel after she is on float, and the merchant hath paid for her; and lastly, the practice of former times doth not justify the admiralty's taking cognizance of their suits. Let the bill be dismissed, as not being within the jurisdiction of the court.